KUSKIN, J.T.C.
Plaintiff seeks to apply the Freeze Act, N.J.S.A. 54:51A-8, so as to reduce the aggregate of the 1995 regular assessment on plaintiffs property (imposed pursuant to N.J.S.A 54:4-23) and a 1995 added assessment (imposed pursuant to N.J.S.A 54:4-63.3) to the amount of the Judgment entered by the Tax Court reducing the 1993 regular assessment on the property. The factual background is as follows.
Plaintiff appealed the 1993 regular tax assessment on property designated as Block 11001, Lot 12 on the Tax Map of the Township of Rockaway, which was improved with a multi-story office building. The appeal was settled at a total assessment of $11,500,000, and a Tax Court Judgment in such amount was entered on December 3, 1993. At the time of the settlement, interior improvements for tenant occupancy had been installed in some, but not all, of the building. The transcript of the settlement proceedings dated April 27, 1993 reflects the parties’ agreement that no added assessment would be imposed for work completed through May 1, 1993 and contains a statement by plaintiffs *330 counsel that “The freeze act is not requested but not waived for 1994.” There is no discussion as to 1995.
For 1995, the subject property was assessed at $11,500,000 in accordance with the 1993 Judgment. Plaintiffs appeal of this assessment and the municipality’s counterclaim have both been withdrawn. On October 1, 1995 an added assessment in the amount $3,961,700, based upon tenant improvement work performed in the building at various times during 1994, was imposed on the property pursuant to N.J.S.A 54:4-63.3 for twelve months of 1995. The aggregate assessments for 1995, therefore, totalled $15,461,700. Plaintiffs appeal of the added assessment is currently pending in the Tax Court.
Plaintiff has filed a motion to apply the Freeze Act to reduce the 1995 aggregate assessments to $11,500,000 using the 1993 Tax Court Judgment as the base year judgment. For purposes of the motion, I have assumed, but not decided, that the 1995 added assessment was properly imposed. Issues raised by plaintiff in its motion papers as to the validity and amount of the added assessment need not be considered or resolved in order to rule on the motion.
The purpose of the Freeze Act has been reiterated by our courts on numerous occasions. In Union Minerals & Alloys Corp. v. Kearny, 13 N.J.Tax 114 (App.Div.1992), the Appellate Division described such purpose as follows:
The design of the Freeze Act is to remedy “repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value, and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board”____ To avoid the mandate of the Freeze Act, it must be established that the value of the property has changed after the assessment date. The burden of proof is on the taxing district.
[M, at 117 (citations omitted).]
The Freeze Act is not applicable to years for which “a program for complete revaluation of all real property within the district has been put into effect.” N.J.S.A 54:51A-8; N.J.S.A 54:3-26. Ennis v. Alexandria Tp., 13 N.J.Tax 423 (1993) holds that the term “revaluation” includes “reassessment.” Id. at 429. *331 Except in years for which a revaluation or reassessment is in effect, the application of the Freeze Act is “mandatory and self-executing.” Clearview Gardens Assocs. v. Parsippany-Troy Hills Tp., 196 N.J.Super. 323, 328, 482 A.2d 523 (App.Div.1984). If a final judgment is entered before the assessing date for the freeze year (October 1 preceding the freeze year), it is the responsibility of the assessor to reduce the assessment for the freeze year in accordance with the base year judgment. In order to avoid the application of the Freeze Act on the grounds of a change in the value of the property, the municipality must file an appeal with the county board of taxation or the Tax Court by April 1 of the freeze year. If the base year final judgment is entered after the assessing date for the freeze year, the taxpayer must apply for Freeze Act relief, and the municipality may resist such application on grounds of change in value. Id. at 329, 482 A.2d 523. See also Cumberland Arms Assocs. v. Burlington Tp., 10 N.J.Tax 255, 259 (1988) and Edgewater Bor. v. United States Life Realty Corp., 2 N.J.Tax 421, 423-24 (Tax 1981), aff'd, 4 N.J.Tax 531 (App.Div.1982).
The “mandatory and self-executing” application of the Freeze Act occurs without regard to whether the base year assessment or the freeze year assessment constitutes a “true valuation of the property” within the meaning of N.J.S.A 54:4-23. The freeze attaches to the assessment contained in the base year judgment, and, unless the municipality asserts a change in value in accordance with the procedures described in the preceding paragraph, the application to the freeze years is a purely mechanical process divorced from considerations of value. Riverview Gardens, Section One, Inc. v. North Arlington Bor., 9 N.J. 167, 173, 87 A.2d 425 (1952). A change in value will render the Freeze Act inapplicable only if the change “is the result of either an internal or an external change occurring after the base-year assessing date which substantially and meaningfully increased the property’s value.” Cumberland Arms Assocs., supra, 10 N.J.Tax at 272.
Under N.J.S.A. 54:4-23, the valuation date for regular assessments is October 1 preceding the tax year, and changes in value which occur after that date (subject to the limited exception *332 contained in N.J.S.A. 54:4-35.1) have no effect on the assessment. October 1 preceding a freeze year (here October 1, 1994) is, therefore, the date for determining, for Freeze Act purposes, whether a change in value has occurred since the base year assessing date (here October 1, 1992), 2nd Roe-Jersey Assocs. v. Morristown Town, 11 N.J.Tax 45, 52 (1990). A change in value which occurs after the October 1 preceding the freeze year (here October 1,1994) cannot provide a basis for avoiding application of the Freeze Act to the freeze year (here 1995).
The purpose of the added assessment statutes is:
to permit the taxation of real property which becomes taxable during the year following the assessment date of October 1, in order to avoid having properties escape taxation until the next assessment date arrives.
[Snyder v. South Plainfield Bor., 1 N.J.Tax 3, 7 (1980).]
An added assessment may be imposed only when the “parcel of real property contains any building or other structure which has been erected, added to or improved after October 1____” and the value of the property as improved “exceeds the assessment made as of October 1 preceding____” N.J.S.A, 54:4-63.2 and 63.3. An added assessment, therefore, imposed for all or a portion of a freeze year must, by statutory definition, be based on a change in value occurring after October 1 preceding the freeze year. An' increase in-assessment based upon a change in value resulting from work completed prior to the October 1 preceding the freeze year may not be imposed by an added assessment and may be imposed only if the municipality follows the appropriate procedure for asserting a change in value. See Glen Pointe Assocs. v. Teaneck Tp., 10 N.J.Tax 598, 600-601 (Tax 1989), aff'd sub nom. Glenpointe Assocs. v. Teaneck Tp., 12 N.J.Tax 127 (App.Div.1991).
If a change in value occurring after the October 1 preceding a freeze year does not provide a basis for avoiding application of the Freeze Act to the assessment covered by the base year judgment, it follows logically that a change in value occurring after such October 1 (here October 1, 1994) and reflected in an added assessment (1) does not preclude application of the Freeze Act to the assessment covered by the base year judgment (here 1993) *333 and (2) does not subject the added assessment to control by that base year judgment.
That added assessments are separate and distinct from regular assessments is evident from the statutory framework. The tax assessor must submit proposed regular assessments to the county board of taxation by January 10 of the current tax year, N.J.S.A 54:4-35, and the county board must examine, revise and correct the assessment list, N.J.S.A 54:4-46, and cause the “corrected, revised and completed” list to be delivered to the tax collector of each municipality in the county by May 27 of the current tax year. N.J.S.A 54:4-55. By contrast, the tax assessor’s list of proposed added assessments must be submitted to the county board of taxation on October 1 following the date of completion of the construction, additions or improvements which are the basis for the added assessments. N.J.S.A. 54:4-63.5. Such submission with respect to an added assessment under N.J.S.A. 54:4-63.2 will necessarily occur in the year after the tax year to which the added assessment is applicable. Regular assessment appeals must be filed by April 1 of the tax year (N.J.S.A. 54:3-21) while appeals of added assessments must be filed by December 1 of the year in which the added assessment is imposed. N.J.S.A. 54:4-63.11. Taxes based upon regular assessments are payable in quarterly installments on February 1, May 1, August 1 and November 1 of each year, N.J.S.A. 54:4-66; taxes based upon added assessments are payable in full on November 1 of the year in which the added assessment is imposed. N.J.S.A. 54:4-63.8. Added assessments are treated separately from regular assessments for purposes of calculating the ratios utilized for State school aid distributions. N.J.S.A. 54:1-35.1; State of New Jersey, Division of Taxation Handbook for New Jersey Assessors, §§ 1002.44, 1003.32 (1989); Willingboro Tp. v. Burlington County Bd. of Taxation, 62 N.J. 203, 221-25, 300 A.2d 129 (1973).
In addition to the express statutory differences in the treatment of regular assessments and added assessments, considerations of assessing policy suggest the establishment of a clear separation of added assessments from regular assessments for Freeze Act *334 purposes. The assessor has the statutory responsibility to determine the amount of both regular assessments and any added assessments. N.J.S.A. 54:4-23; N.J.S.A. 54:4-63.2-63.3. See In re Appeal of Monroe Tp., 289 N.J.Super. 138, 151-52, 673 A.2d 279, 285 (App.Div.1995). If a base year judgment as to a regular assessment operated, as plaintiff contends, to freeze, at the base year assessment, the aggregate of the regular assessment and an added assessment properly imposed for the freeze year, the assessor could be excluded and precluded from assessing completed new construction for over one year. If, for example, a property owner appealed a 1993 vacant land assessment (based on an October 1,1992 assessing date), obtained a judgment reducing the assessment on December 3, 1993, commenced construction of a multi-million dollar building on October 2, 1994 and completed construction on January 2, 1995, under plaintiffs theory the assessor would have no role in assessing the building until 1996 and the budding might totally escape assessment until 1996.
Building construction commencing after October 1, 1993 could not be included in the 1994 regular assessment. A complaint filed by the municipality seeking to avoid application of the Freeze Act for 1994 on the grounds of change in value would, under the assumed facts, be unsuccessful because the change did not occur between the base year assessing date (October 1, 1992) and October 1, 1993. No added assessment would be proper for 1993 or 1994 because the building was not “completed” until January 2, 1995. The value as of October 1, 1994 of the partially completed building, if assessed, would be subject to the Freeze Act which would apply to reduce the assessment to the level of the base year judgment unless the municipality (not the assessor) filed a Freeze Act avoidance petition or complaint by April 1, 1995. Under plaintiffs theory, an added assessment imposed on October 1,1995 for eleven months of 1995, based on a building completion date of January 2, 1995, would be subject to the Freeze Act using the 1993 judgment covering vacant land, and, therefore, the added assessment would be eliminated. The completed building could *335 not be assessed until 1996, using an October 1, 1995 assessing date, even though the building was complete on January 2, 1995.
This scenario, which is the inevitable result of adopting plaintiffs position, is surely contrary to the intent and purpose of N.J.S.A. 54:4-63.2 and 63.3. In Appeal of New York State Realty & Terminal Co., 21 N.J. 90, 121 A.2d 21 (1956), the Supreme Court, in permitting an omitted added assessment to be imposed, noted
Taxes are the life blood of government and no taxpayer should be permitted to escape the payment of his just share of the burden of contributing thereto. Any procedure which would permit avoidance of such taxes when a substantial basis therefor exists is inequitable— The effect of ... [the Added Assessments Law and the Omitted Assessments Law] is to aid in accomplishing a proper and equitable distribution of the tax burden.
[Id. at 96-97, 121 A.2d 21 (citations omitted). See also Snyder v. South Plainfield Bor., supra, 1 N.J.Tax at 9-10.]
Plaintiff exalts the Freeze Act to the position of controlling the assessment process, although the purpose of the Freeze Act is only to protect taxpayers from arbitrary repeated yearly changes in assessment and from harassment. This purpose is served by applying the Freeze Act to the assessment included in the base year Judgment and by excluding properly imposed added assessments from the scope of the Act.
The application of the foregoing to the facts herein is straightforward. The base year Judgment for the tax year 1993 reducing the regular assessment on the subject property was entered on December 3, 1993, well in advance of the October 1, 1994 assessment date for the 1995 tax year. The Rockaway Township assessor was, therefore, obliged to reduce the regular assessment for 1995 (a freeze year) in accordance with the 1993 judgment. This was done. The added assessment for 1995, to the extent the assessment is based on a change in value by reason of work completed after October 1, 1994, is not subject to a freeze based on the 1993 base year judgment, and the municipality need not file a Freeze Act avoidance appeal in order to impose such added assessment.
*336 As noted above, plaintiff appealed the 1995 added assessment, and the validity and amount of the assessment will be determined in those proceedings. Because the Freeze Act is applicable to the 1995 regular assessment of $11,500,000, the taxpayer and the municipality are bound by such assessment because their appeals of this assessment were withdrawn.
In holding that the Freeze Act does not apply to a properly imposed added assessment, I am aware that the added assessment may, as a practical matter, deprive a taxpayer of the protection of the Freeze Act for the year in which the added assessment is imposed. N.J.S.A 54:4-63.2 and 63.3 provide that the amount of the added assessment is to equal the difference between the original assessment and the value of the property as improved. If the “frozen” assessment is artificially low due to the application of the Freeze Act, the added assessment will be commensurately higher. This potential loss of Freeze Act protection is not a reason to extend a regular assessment freeze to an added assessment properly imposed for the freeze year. In New Jersey Foreign Trade Zone Venture v. Mount Olive Tp., 242 N.J.Super. 170, 576 A.2d 303 (App.Div.1990) the Appellate Division held that a taxpayer appealing an added assessment must present proofs as to the value of the entire property, land and building, and may not simply accept the land assessment where that assessment is demonstrably unreliable. The court rejected the taxpayer’s contention that an added assessment appeal should not create a risk of losing the benefit of a favorable land assessment.
We reject Foreign Trade’s argument asserting that it is unfair for a municipality to force a taxpayer to “surrender” an underassessment of the land value portion of the assessment in order to contest an excessive added assessment of the building portion. The quarrel is essentially with the statutory mechanism that requires valuation of the entire parcel. We find no unfairness under the circumstances.
[Id., at 175-76, 576 A.2d 303.]
Here the “statutory mechanism” obligates the assessor to impose, as of the first day of the month following completion, added assessments on buildings “erected, added to or improved” after the October 1 assessing date. N.J.S.A. 54:4-63.2 and 63.3. There is “no unfairness under the circumstances.” See Appeal of New *337 York State Realty & Terminal Co., supra, 21 N.J. at 96-97, 121 A.2d 21.
Plaintiffs motion to apply the Freeze Act is granted with respect to the 1995 regular assessment of $11,500,000 on plaintiffs property. Plaintiffs’ motion to apply the Freeze Act to the 1995 added assessment of $3,961,700 is denied without prejudice. Because the 1995 regular assessment is in accordance with the 1993 base year judgment, no further judgment will be issued at this time.